```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT


MICHAEL SHOVAH,                    :
                                   :
            Plaintiff,             :
                                   :  Case No. 2:11-cv-201
      v.                           :
                                   :
FR. GARY MERCURE, THE ROMAN        :
CATHOLIC CHURCH OF ALBANY,         :
NEW YORK, INC.                     :
                                   :
            Defendants.            :
```

**Memorandum Opinion & Order**

Plaintiff Michael Shovah filed suit against Defendants Father Gary Mercure and the Roman Catholic Diocese of Albany, New York (the "Diocese"), seeking recovery for damages related to sexual abuse. There are five motions before the Court: (1) the Diocese's Motion to Dismiss for Lack of Supplemental Jurisdiction (ECF No. 61); (2) the Diocese's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 22); (3) the Diocese's Motion for Protective Order Re: February 2012 Interrogatories (ECF No. 47); (4) the Diocese's Motion for Protective Order Re: April 2012 Interrogatories (ECF No. 66); and (5) Plaintiff's Motion to Compel April 2012 Interrogatories (ECF No. 68).

For the reasons set forth below, the Court DENIES the Diocese's Motion to Dismiss for Lack of Supplemental

Jurisdiction. The Court also DENIES as premature the Diocese's Motion to Dismiss for Lack of Personal Jurisdiction. All other motions related to interrogatories are DENIED in part and GRANTED in part, consistent with the Order below. The Court provides the Diocese thirty days to comply with pending interrogatories.

**FACTUAL BACKGROUND**

On August 10, 2011, New York resident Michael Shovah filed suit against Mercure and the Diocese. Shovah bases jurisdiction on 28 U.S.C. §§ 1331 and 1367 as well as 18 U.S.C. § 2255, which states that certain victims of sexual abuse may file personal injury suits "in any appropriate United States District Court." See 18 U.S.C. § 2255(a).

In his Complaint, Shovah alleges that Mercure was a priest and employee of the Diocese during all relevant times and that the Diocese presented Mercure as a trustworthy priest of good standing. Shovah claims he came to know and trust Mercure as an employee of the Diocese and that in the late 1980's Mercure brought Shovah (a minor at the time) from New York to Vermont for the purpose of sexually abusing him and did sexually abuse him during that trip.[1]

---

[1] Shovah does not state when the purported sexual abuse occurred; rather, the Diocese states that the purported sexual abuse

Shovah's Complaint seeks compensatory and exemplary damages as well as reasonable attorney's fees as prescribed by 18 U.S.C. § 2255. The Complaint includes five counts. Count I alleges Mercure engaged in sexual exploitation and abuse of Shovah when he was a child pursuant to 18 U.S.C. §§ 2255, 2422, and 2423, which provide a monetary remedy for victims transported interstate for purposes of sexual abuse. See 18 U.S.C. §§ 2255(a), 2422, and 2423. Counts II, III, and IV raise state law claims for Breach of Fiduciary Duty, Negligent Supervision, and Failure to Prevent Harm against the Diocese. Count V is a state law claim for outrageous conduct against the Diocese and Mercure. Thus, Shovah brings no federal claim against the Diocese.

The parties began discovery in September 2011, but the process eventually came to a halt. In February 2012, Shovah propounded interrogatories inquiring into the Diocese's contact with Vermont. Many of these interrogatories went unanswered and in March 2012 the Diocese filed a Motion for Protective Order Re: February Interrogatories. The Diocese then filed a Motion to Dismiss for Lack of Personal Jurisdiction, arguing that the

---

occurred during the late 1980's, a statement Shovah has not disputed.

Diocese has insufficient contact with Vermont to make it amenable to suit in this Court.

This Court held a hearing in late March 2012, issuing a ruling from the bench that discovery should continue on the limited issue of personal jurisdiction. In accordance with the ruling, Shovah propounded further interrogatories in April 2012, which were limited to the issue of personal jurisdiction. However, the Diocese refused to answer these interrogatories, resulting in a pair of new motions—the Diocese's Motion for Protective Order Re: April 2012 Interrogatories and Shovah's Motion to Compel April 2012 Interrogatories.

The Diocese thus has two pending motions for a protective order—one each for the February 2012 and the April 2012 interrogatories. In its motions, the Diocese states that Shovah's interrogatories are unjustified, claiming that Shovah makes no prima facie showing of personal jurisdiction sufficient to subject the Diocese to discovery. The Diocese also insists that, as separate legal entities from the Diocese, the various parishes from which Shovah seeks information are not subject to discovery. Furthermore, the Diocese sets forth individual objections to almost all of Shovah's interrogatories, arguing privilege, irrelevance, and unwarranted burden.

4

In addition to its motions for a protective order and its Motion to Dismiss for Lack of Personal Jurisdiction, the Diocese recently filed a Motion to Dismiss for Lack of Supplemental Jurisdiction, arguing that this Court lacks subject-matter jurisdiction over all claims alleged against the Diocese. The argument is that only the one federal claim against Mercure falls within this Court's original jurisdiction and that there is no common nucleus of operative facts between that claim and the four state law claims alleged against the Diocese. The Diocese further states that even if all causes of action involve a common nucleus of operative facts, this Court should nevertheless decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c), since the state law claims alleged against the Diocese substantially predominate this dispute as well as raise novel and complex issues of New York law.

Shovah disagrees, claiming that supplemental jurisdiction is proper. Shovah also maintains that his interrogatories related to personal jurisdiction are justified, believing that he adequately alleged a prima facie showing of personal jurisdiction. In support of his personal jurisdiction allegations, Shovah submitted testimony stating that the Diocese, through a Father Thomas Zelker, acted in a substantial capacity to "support the sacramental and liturgical life" of the

5

parish at St. Frances Cabrini in West Pawlet, Vermont between 2002 and 2009. In addition to Father Zelker, Shovah claims that other Diocese priests have come to Vermont during pertinent time periods for purposes of providing Vermonters with the Catholic sacraments. The Diocese's presence in Vermont is further evinced by its Vermont-targeted internet advertisements as well as its weekly publication—the Evangelist[2]—which is mailed to numerous Vermont residents.

As to the Diocese's claim that parishes are separate legal entities from the Diocese and thus not subject to discovery, Shovah argues that as "head of the Albany Diocese" the Bishop of Albany can produce any parish documents needed for discovery, rendering the Diocese's argument misleading and tenuous.

## DISCUSSION

**I. The Court Denies the Diocese's Motion to Dismiss for Lack of Supplemental Jurisdiction.**

  A. <u>Supplemental Jurisdiction is Proper under 28 U.S.C. § 1367(a).</u>

Under 28 U.S.C. § 1367(a), a district court "shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they

---

[2] The Evangelist is "the official publication of the Roman Catholic Diocese of Albany." The Evangelist is a print magazine of tabloid size, published forty-eight times per year, delivered to subscribers by mail.

6

form part of the same case or controversy." Supplemental jurisdiction thus requires (1) a federal "anchor" claim sufficient to confer subject-matter jurisdiction, and (2) that the anchor claim and the state law claim are "part of the same case or controversy." See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 332 (2d Cir. 2011).

Here, there is no dispute that Shovah's claim against Mercure under 18 U.S.C. § 2255 is within the Court's federal-question jurisdiction and as such may serve as an anchor claim. The question is whether Shovah's federal claim and his state law claims constitute the same case or controversy.

In determining whether federal and state law claims constitute the same case or controversy, courts look to whether the claims "share a common nucleus of operative facts" and whether the claims are "such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." See id. (internal quotations omitted); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). The Second Circuit has "routinely upheld the exercise of [supplemental] jurisdiction where the facts underlying the federal and state law claims substantially overlapped." Lyndonville Sav. Bank & Trust Co., 211 F.3d at 704; Achtman v. Kirby, McInerney &

Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006). Courts find that claims constitute the same case or controversy even when "the state law claim is asserted against a party different from the one named in the federal claim." Achtman, 464 F.3d at 335 (quoting Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)).

Shovah's federal claim against Mercure and his state law claims against the Diocese constitute the same case or controversy. The alleged facts underlying the claims substantially overlap: Mercure sexually abused Shovah and Shovah suffered injuries as a result. While Mercure is charged with committing the assault, the Diocese is charged with responsibility for the assault via its negligent supervision, breach of fiduciary duty, and failure to prevent harm. A trial against the Diocese would necessarily involve the same facts as a trial against Mercure. Shovah would ordinarily be expected to try all his claims in one judicial proceeding.

B. Supplemental Jurisdiction is Appropriate under 28 U.S.C. § 1367(c).

When claims form part of the same case or controversy for purposes of 28 U.S.C. § 1367(a), a court may still decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). See 28 U.S.C. § 1367. However, a court may decline to exercise

8

supplemental jurisdiction under 28 U.S.C. § 1367(c) only when at least one of four factors is applicable:

1) 28 U.S.C. § 1367(c)(1)—the state law claim raises "a novel or complex issue of State law";
2) 28 U.S.C. § 1367(c)(2)—the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction";
3) 28 U.S.C. § 1367(c)(3)—"the district court has dismissed all claims over which it has original jurisdiction"; or
4) 28 U.S.C. § 1367(c)(4)— "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

See 28 U.S.C. § 1367(c); Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 244 (2d Cir. 2011).

In providing that a district court "may" decline to exercise supplemental jurisdiction, 28 U.S.C. § 1367(c) is permissive rather than mandatory. See Shahriar, 659 F.3d at 245. The Second Circuit has nevertheless set some guidelines for district courts. See, e.g., Oneida Indian Nations of New York v. Madison Cnty., 665 F.3d 408, 437 (2d Cir. 2011). For instance, section 1367(c) analysis "goes to the" type of claims alleged, not the amount of damages sought under those claims. See Shahriar, 659 F.3d at 246-47. "Declining to exercise jurisdiction after all original-jurisdiction claims have been dismissed is especially appropriate where the [supplemental] claims present novel or unsettled questions of state law." See Oneida Indian Nations of New York, 665 F.3d at 437. "Once it appears that a state claim constitutes the real body of a case,

9

to which the federal claim is only an appendage, the state claims may fairly be dismissed." See id. at 439.

Section 1367(c) currently provides no basis for declining supplemental jurisdiction. Although section 1367(c)(1) is at least relevant to this dispute, dismissal based on it would be inappropriate. It is true that Shovah's state law claims against the Diocese are intricate, involving issues of, for example, fiduciary duty within the context of a religious institution. This does not mean, however, that Shovah's claims against the Diocese are so novel and complex to warrant dismissal. While the Diocese insists that Shovah's claims present issues of first impression under New York law, the case law disagrees.[3] In Doe v. Roman Catholic Diocese of Rochester, the Court of Appeals of New York adjudicated a case nearly identical to this case. See generally 907 N.E.2d 683 (N.Y. 2009). In Marmelstein v. Kehillat New Hempstead, the Court of Appeals of New York issued a lengthy opinion, detailing numerous considerations related to fiduciary relationships within the context of religious institutions. See generally 892 N.E.2d 375 (N.Y. 2008). In light of these recent New York cases, one could

---

[3] The Court has not adjudicated any choice-of-law issues. For the sake of addressing the Diocese's argument, we assume here arguendo that New York law governs Shovah's claims against the Diocese.

actually argue that Shovah's claims against the Diocese present well-settled issues of New York law.

Section 1367(c)(2) is ultimately inapplicable here as well because Shovah's claims against the Diocese do not "*substantially* predominate" over Shovah's federal claim. Shovah's federal claim seeks recovery for sexual abuse under a statute specifically enacted to provide certain victims with monetary relief, suggesting that Shovah's federal claim is not a mere "appendage" to his state law claims against the Diocese. See 18 U.S.C. § 2255 (stating that victims must recover no less than $150,000). Furthermore, Shovah's state law claims are strongly interrelated to his federal claim such that Shovah likely must prove Mercure's liability before recovering from the Diocese. With these considerations in mind, it may be that Shovah's federal claim against Mercure actually predominates over his state law claims against the Diocese.

Section 1367(c)(3) is not relevant to this action because this Court has not dismissed any claim over which it has original jurisdiction.

Lastly, because there are no exceptional or compelling circumstances warranting this Court to decline jurisdiction, dismissal based on section 1367(c)(4) would be inappropriate.

Understanding that subject-matter jurisdiction issues may be raised at any point during litigation, the Court sees no reasonable basis for declining supplemental jurisdiction based on section 1367(c) at this point.

**II. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is Denied as Premature.**

A plaintiff defeats a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction when it alleges "good faith, legally sufficient allegations of jurisdiction." See Wiwa v. Shell Petroleum Dev. Co., No. 08-1803-cv, 2009 WL 1560197, at *2 (2d Cir. 2009) (not reported) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)).

Shovah has alleged good faith, legally sufficient allegations of personal jurisdiction over the Diocese and the Court therefore denies as premature the Diocese's Motion to Dismiss for Lack of Personal Jurisdiction (just as the Court did in its bench ruling during the March 2012 hearing).[4] Shovah alleges that the Diocese, through its agent Father Zelker, acted in a substantial capacity to "support the sacramental and liturgical life" of the parish at St. Frances Cabrini in West Pawlet, Vermont during the decade leading up to this action. Shovah also claims that Diocese priests other than Father Zelker

---

[4] Shovah submits considerable documentation in support of his jurisdictional allegations, including hand written notes, internet screen shots, and a lengthy deposition transcript.

have come to Vermont during pertinent time periods for purposes of providing Vermonters with the Catholic sacraments. Documentation submitted to the Court shows that the Diocese actively targets Vermont residents with internet advertising as well as weekly Evangelist mailings.  It also appears that a number of Vermont residents regularly attend parishes within the Diocese's New York territory.

In further support of his jurisdiction argument, Shovah highlights an alleged fact central to his case: the Diocese represented Mercure as a priest of good standing and failed to supervise him, resulting in sexual abuse *in Vermont*.  It is relevant that Vermont borders the Diocese's New York territory. It is not as if the Diocese's negligence resulted in Mercure flying a child to Alaska; it resulted in the foreseeable travel to near-by Vermont.

Shovah should obtain discovery related to the Diocese's contact with Vermont.  Briefing on the issue of personal jurisdiction should follow discovery.

**III. All Motions Related to Interrogatories are Denied in Part and Granted in Part, Consistent with this Order.**

"On motion or on its own, the court must limit the frequency or extent of discovery" when it determines that "discovery sought is unreasonably cumulative" or when it

determines that "the burden or expense of the proposed discovery outweighs its likely benefit." See Fed. R. Civ. P. 26(b)(C).

In determining whether a court has general jurisdiction over a defendant, courts must look to the defendant's alleged contact with the forum state over a "reasonable" period, a period up to and including the date suit was filed. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1998). It is in the trial court's discretion to determine what constitutes a reasonable period given the circumstances of each case. See id. at 570.

The Diocese's objections to Shovah's interrogatories generally fit into one of four categories: (1) the discovery sought will not establish personal jurisdiction; (2) personnel files sought are privileged and irrelevant; (3) information sought related to various parishes is inappropriate because the parishes are separate legal entities from the Diocese; and (4) Shovah's interrogatories are overly broad and burdensome.

Shovah's interrogatories largely focus upon and are likely to lead to discovery of evidence related exclusively to the personal jurisdiction question. The court also finds that, with some exceptions discussed below, the evidence sought to be discovered is relevant and not privileged.

14

The Court rejects the Diocese's argument that because parishes are separate legal entities from the Diocese, information sought related to various parishes is inappropriate. This argument is not convincing on its face—the Diocese includes no useful citation or legal analysis, instead merely asserting the static fact that parishes are separate entities. The Bishop of Albany as "head of the Albany Diocese" has authority to supply the requested information, regardless of whether it relates to a parish or the central Albany Diocese.

Although the Court rejects many of the Diocese's objections, some of them do have merit. Keeping these valid objections in mind, the Court limits Shovah's interrogatories pursuant to the following framework: interrogatories may not seek information dated earlier than 2002;[5] to the extent interrogatories seeking duplicative information, they are denied; and to the extent interrogatories seeking burdensome, overly broad, or irrelevant information, they are denied.

Accordingly, the Court orders the below as it relates to each disputed interrogatory. The Court also attaches its revised interrogatories, which the Diocese must answer within thirty days.

---

[5] Shovah alleges that Father Zelker's contact with Vermont began in 2002. For this reason and others, the Court limits discovery to 2002.

Additionally, in light of the Diocese's "separate entities" argument, the Court expands the scope of discovery beyond the Diocese's contact with Vermont such that Shovah may explore the relationship between the Diocese and the parishes within the Diocese's territory. Shovah may also explore the relationship between Mercure and the parishes within the Diocese's territory.

A. February 2012 Interrogatories

No. 3—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 5—the Diocese must comply with this interrogatory so long as re-written: "Please describe any property in the state of Vermont owned by the Roman Catholic Diocese of Albany, New York, including its parishes and sub-entities."
No. 6—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 7—the Court strikes this interrogatory as the interrogatory is duplicative of April 2012 Interrogatory No. 3.
No. 8—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 9—the Diocese must comply with this interrogatory so long as re-written: "Please identify the number of contributors and state the date and amount of all contributions the [Diocese of Albany], including its parishes and sub-entities, has received from anyone in Vermont since 2002."
No. 10—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 11—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 12—the Diocese must comply with this interrogatory so long as re-written: "Please identify any Vermont resident to whom the [Diocese of Albany], including its parishes or sub-entities, has sent any diocesan publications such as newspapers, bulletins, or magazines since 2002, state the dates of the mailings and identify the publications."

No. 13—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 14—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 15—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 16—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 17—the Court strikes this interrogatory as the interrogatory is duplicative of April 2012 Interrogatory No. 8.
No. 18—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 19—the Diocese must comply with this interrogatory so long as re-written: "Please produce the number of Vermont residents who attend or have attended St. Mary's Academy, Hoosick, New York since 2002."
No. 20—the Court strikes this interrogatory as the information sought will not establish personal jurisdiction.
No. 21—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 22—the Court strikes this interrogatory as the interrogatory is overly broad.
No. 23—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.

B. April 2012 Interrogatories

No. 1—the Diocese must comply with this interrogatory.
No. 2—the Diocese must comply with this interrogatory.
No. 3—the Diocese must comply with this interrogatory so long as re-written: "Please provide the number of Vermont residents currently attending parishes within twenty-five miles of Vermont."
No. 4—the Court strikes this interrogatory as the information sought will not establish personal jurisdiction.
No. 5—the Court strikes this interrogatory as the interrogatory is duplicative of April 2012 Interrogatory No. 3.

No. 6—the Diocese must comply with this interrogatory so long as re-written: "Please produce those portions of the personnel file for any Albany Diocese cleric or agent who has acted as the administrator or overseer of a parish in Vermont since 2002 or celebrated mass in Vermont which relate to such service."
No. 7—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 8—the Diocese must comply with this interrogatory so long as re-written: "Please produce those portions of the personnel file for any Albany Diocese cleric or agent who has been an overseer or administrator of a Vermont parish or Church or administered any sacraments in Vermont since 2002 which relate to such service."
No. 9—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.
No. 10—the Diocese must comply with this interrogatory so long as re-written: "Please produce those portions of the personnel files for Fr. Thomas Zelker and for Fr. Phillip Cioppa which relate to work they did in Vermont."
No. 11—the Diocese must comply with this interrogatory, except to the extent it seeks information dating earlier than 2002.

## CONCLUSION

For the aforementioned reasons, the Court hereby DENIES the Diocese's Motion to Dismiss for Lack of Supplemental Jurisdiction. The Court also hereby DENIES as premature the Diocese's Motion to Dismiss for Lack of Personal Jurisdiction. All other motions related to interrogatories are hereby DENIED in part and GRANTED in part, consistent with the Order above. The Court provides the Diocese thirty days to comply with pending interrogatories.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of July, 2012.

/s/William K. Sessions III
William K. Sessions III
U.S. District Court Judge