UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

```
Michael Shovah,                     :
                                    :
               Plaintiff,           :
                                    :        Case No. 2:11-cv-201
     v.                             :
                                    :
Gary Mercure, The Roman             :
Catholic Diocese of Albany,              :
New York, Inc.                      :
                                    :
               Defendants.          :
                                    :
```

## Opinion and Order

Michael Shovah alleges that Gary Mercure, a former priest from the Roman Catholic Diocese of Albany New York, Inc. (the "Diocese"), engaged in sexual exploitation and abuse of children in violation of 18 U.S.C. §§ 2422 and 2423. Shovah claims that the Diocese breached its fiduciary duty to Shovah by permitting Mercure to hold himself out as a Roman Catholic Priest and negligently supervised Mercure, which facilitated Shovah's abuse. Shovah also claims that the Diocese's conduct was outrageous and caused Shovah to suffer extreme emotional distress. The Diocese moves to dismiss the claims against it for want of personal jurisdiction. Mot. Dismiss, ECF No. 90. For the reasons explained below, that motion is denied.

**Background**

Gary Mercure served as a priest for the Diocese. Compl. ¶ 8, ECF No. 1. Shovah alleges that Mercure transported him from New York to Vermont with the intent to engage in criminal sexual activity with the Plaintiff. *Id*. ¶¶ 15-17. The Diocese did not sanction, sponsor, or authorize Mercure's trip to Vermont. Farano Aff. ¶ 23, ECF No. 90-1.

The Diocese of Albany ("Diocese") is a New York special act corporation created under the New York Religious Corporations Law and maintains its principal office in Albany. Compl. ¶ 7; Farrell Aff. (April 26, 2013) ¶ 11, ECF No. 90-4. The Diocese territory overlaps with fourteen New York State counties. Farrell Aff. ¶ 11. The Diocese does not own any real property, maintain an office, or possess any financial accounts in Vermont. *Id*. ¶¶ 4-6.

*The Evangelist* serves as the weekly newspaper of the Diocese and maintained an average weekly circulation of over 46,000 copies between 2002 and 2012. Blain Aff. ¶ 3, ECF No. 90-5. A total of 40 Vermonters received *The Evangelist* during the same period. *Id.* ¶ 4. Between 2002 and 2012, 235 Vermonters gave philanthropic gifts totaling $56,305.00, which represents 0.080 percent of all monies received by the Diocese during that period. Prindle Aff. ¶¶ 5-6.; List of Gifts from Vermont Residents, ECF No. 92-4. In the same ten years, the

Diocese utilized at least six Vermont vendors, *see* Vendor Lists, ECF No. 92-3, and twelve Vermont students were enrolled in Diocesan schools.  *See* List of Vermont Children Enrolled in Diocese Schools, ECF No. 92-6.

Priests incardinated to the Diocese of Albany conducted a number of services in Vermont between 2002 and 2012.[1]  Doyle Aff. ¶¶ 5-6, ECF No. 90-2.  From July 2002 to February 2009, the Diocese permitted Father Zelker, a priest at St. Mary's Parish in Granville, New York, to celebrate a Sunday morning Mass at the St. Frances Cabrini Church in West Pawlet, Vermont.  Zelker Aff. (June 12, 2013) ¶ 8, ECF No. 93-2.  When he announced the arrangement, Kenneth Angell, the Bishop of Burlington, explained that Father Zelker's role had been authorized by Howard Hubbard, the Bishop of Albany.  Letter from Kenneth Angell, the Bishop of Burlington, to the St. Frances Cabrini Parish (June 27, 2002), ECF No. 103-1.  At the end of 2008, Bishop Hubbard wrote to Salatore Matano, Angell's successor as Bishop of Burlington, to explain that the Albany Diocese's pastoral planning process had recommended "that [the Albany Diocese] not continue to staff St. Frances Cabrini Parish in West Pawlet of the Burlington

---

[1] Incardination creates a bond between a cleric and a canonical institution.  Aff. Francis Morrisey, ¶¶ 2-3, ECF No. 93-1. "Incardination determines to whom a cleric is accountable." *Id*. ¶ 5.  A priest can only be incardinated into one canonical institution at a time, which means that a priest must be excardinated at one Diocese before he is incardinated at another.  Dep. Msgr. John McDermott, 49:15-49:25, ECF No. 92-14.

Diocese." Letter from Howard Hubbard, Bishop of Albany, to Salvatore Matano, Bishop of Burlington (Dec. 30, 2008), ECF No. 103-5. In addition to Father Zelker, thirteen priests from the Diocese of Albany conducted at least sixteen services of worship in Vermont between 2002 and 2012. Pl.'s Mem. in Opp'n, Ex. A.

Individual parishes within the Diocese had their own contacts with Vermont. Each parish in the Albany Diocese constitutes a separate religious corporation. Farrell Reply Aff. (June 13, 2013) ¶ 3, ECF No. 93-3. Pursuant to the New York Religious Corporations Law, each parish is governed by five trustees, which include the Bishop of Albany, the vicar-general of the Diocese, the local pastor, and two laypersons of the church. *Id.* ¶ 4. Each parish owns its real property, establishes its own operating budget, relies on its own parishioners for charitable contributions to support its budget, and hires and supervises its own employees. *Id.* ¶¶ 5-8. In sum, six parishes within the Diocese have employed a total of eighteen employees who reside in Vermont and have served a total of seventy-eight parishioners who reside in Vermont. *See* Costello Decl. (June 13, 2013) ¶¶ 8-25, ECF No. 93-4. These parishes are engaged in business dealings with a total of twenty-one Vermont vendors and accepted advertisements from eleven Vermont vendors for publication in church materials between 2002 and 2012. *Id.*

4

## DISCUSSION

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) ("The burden of proving jurisdiction is on the party asserting it."). Where there has been limited discovery and the motion is being decided without an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdiction, through its own affidavits and supporting materials. *Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.*, 977 F.Supp 297, 300 (D. Vt. 1997). Although the Court must resolve factual disputes in favor of Shovah, it must accept as true any facts contained in the Diocese of Albany's supporting affidavits that he does not dispute. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (explaining that a Court may rely on undisputed facts to establish jurisdiction).

To exercise personal jurisdiction over the Diocese, the Court must determine (1) the Diocese is subject to service of process under Vermont laws and (2) that the Court's assertion of jurisdiction under those laws comports with the requirements of due process. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Because Vermont's long-arm statute reflects a "clear policy to assert jurisdiction over

5

individual defendants to the full extent permitted by the Due Process Clause," *Id.* at 567 (internal quotation omitted), the two inquiries merge into one: whether the Court's exercise of personal jurisdiction over the Diocese satisfies the requirements of due process.

The due process requirement for personal jurisdiction has two components: the minimum contacts inquiry and the reasonableness inquiry. The first component "protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction." *Metro. Life Ins. Co.*, 84 F.3d at 567. Courts differentiate between two types of jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). In this case, Shovah advances a theory of general but not specific jurisdiction. *See* Pl.'s Reply Mem. at *6, ECF No. 92. The second component of due process "asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

## I.   General Jurisdiction

For a court to assert general jurisdiction over a corporation, its contacts with the forum state must be "so 'continuous and systematic' as to render them essentially at home . . . ."  *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe*, 326 U.S. at 317).  "There is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole."  *Metro. Life Ins*. Co., 84 F.3d at 570.

The Diocese of Albany's direct contacts with the state of Vermont have been limited.  The Diocese maintains no financial or physical foothold in the state of Vermont; however, it does distribute its weekly newsletter, *The Evangelist* in Vermont. From 2002 to 2012, the Diocese has distributed the newsletter to 40 Vermont residents, a small fraction of the newsletter's total circulation.  Similarly, the Diocese has collected a total of $56,305 in charitable donations from Vermonters, but that represents about 0.080 percent of all of the contributions the Diocese collected in those years.

Nonetheless, this Court must also consider the contacts of Diocese priests with the state of Vermont.  An agent's contacts are imputable to the principal for the purposes of establishing personal jurisdiction where "(1) the agent acted within the scope of actual or apparent authority bestowed by the principal;

7

or (2) the principal ratified the agent's actions after the fact." *Lakeside Equip. Corp. v. Town of Chester*, 173 Vt. 317, 324, 795 A.2d 1174, 1180 (2002) (citing *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1073 (9th Cir. 2001)).

Between 2002 and 2010, priests acting with the actual and apparent authority of the Diocese of Albany performed services of worship in Vermont.  The Diocese permitted Father Zelker, a priest incardinated with the Diocese and placed at St. Mary's Parish in Granville, New York, to celebrate Sunday Mass at the St. Frances Cabrini Church in West Pawlet, Vermont between July 2002 and February 2009.  Official Church correspondence indicates that the Bishop of Albany specifically authorized Zelker's part-time responsibilities at the St. Frances Cabrini Parish.  *Id.*  That the arrangement was terminated at the request of the Albany Diocese also indicates that the Diocese maintained ultimate authority over Zelker, including his part-time responsibilities in Vermont.  Because Father Zelker exercised actual authority as an agent of the Albany Diocese, his contacts with Vermont may be imputed to the Diocese.

Other priests from the Diocese of Albany travelled to Vermont to perform services of worship between 2002 and 2012 on a more sporadic basis.  Shovah cannot point to any facts showing that these services were performed with the actual authority of the Diocese; however, there remains the question of whether they

8

were performed with apparent authority.  Apparent authority "derives from conduct of the principal, communicated or manifested to the third party, which reasonably leads the third party to rely on the agent's authority." *Lakeside Equipment Corp.,* 173 Vt. at 324 (quoting *New England Educ. Training Serv., Inc. v. Silver Street P'ship*, 148 Vt. 99, 105, 528 A.2d 1117, 1120 (1987)).  Referring to the Restatement (Second) of Agency, the Second Circuit has explained that a principal "causes his agent to have apparent authority by conduct which, reasonably interpreted, causes third persons to believe that the principal consents to have an act done on his behalf." *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda--Permanent Mission*, 877 F.2d 189, 193 (2d Cir. 1989).  Furthermore, "[t]he appointment of a person to a position with generally recognized duties may create apparent authority." *Id*.  As such, the ultimate question is not whether, under canon law, a priest's actual authority to perform a service derives from the Diocese of his incardination or the Diocese where those services are performed; rather, the question is whether a third party would reasonably believe that these priests are acting as agents of the Albany Diocese when they travel to Vermont to perform religious services.

    Here, the Diocese's incardination of its priests is sufficient to establish a reasonable assumption on the part of third-parties that the Diocese authorizes priests to perform

9

services of worship.  Crucial is the fact that the particular contacts at issue here are part of the priests' core responsibilities as officers of the church and the Diocese: the celebration of religious services.  When a priest travels outside of the Albany Diocese to perform a service, he remains an officer of the Diocese and is ultimately responsible to it.  The Diocese argues that imputing these contacts to the Diocese would interfere with its First Amendment right to shape its own religious mission; however, applying jurisdictional standards that are both neutral and generally applicable does not burden the Diocese's right to free exercise of religion.  *See, e.g. Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990).  Accordingly, the sixteen services of worship conducted by thirteen priests from the Diocese of Albany in Vermont between 2002 and 2012 are also contacts that can be imputed to the Diocese.

Viewed together, the Diocese's contacts with Vermont, including the services of worship conducted by Zelker and other Diocese priests between 2002 and 2012 are sufficiently continuous and systematic to render the Diocese at home in Vermont.[2]  The Diocese's contacts with Vermont, particularly Father Zelker's weekly Mass at the St. Frances Cabrini Parish,

---

[2] Because the Court finds that the priest contacts with Vermont are sufficient contacts to establish general jurisdiction, the Court does not address whether the Parish contacts may be imputed to the Diocese.

reached a level where the Diocese could "reasonably anticipate being haled into court" in Vermont. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). For this reason, the Court finds that the Albany Diocese has sufficient contacts with the state of Vermont for this Court to subject it to personal jurisdiction.

**II.   Reasonableness**

This Court's exercise of personal jurisdiction over the Diocese must also comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Whether or not the exercise of jurisdiction is reasonable depends on five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co.*, 84 F.3d at 568; *see also Burger King*, 471 U.S. 462, 477.

The first factor, the burden the exercise of jurisdiction will impose on the defendant, weighs slightly in favor of the Diocese. None of the Diocese's records, files, or witnesses are located in Vermont, *see Metro. Life Ins. Co.*, 84 F.3d at 574

(raising these considerations); however, the burden imposed on the Diocese is not a great one because it is located close to the forum state.

The second factor, the interests of the forum in adjudicating the case, weighs strongly in favor of exercising jurisdiction. Vermont has a strong interest in providing legal redress for abuse that occurs in the state, regardless of who is involved. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter.").

The third factor, the plaintiff's interest in obtaining convenient and effective relief, weighs in favor of subjecting the Diocese to suit in Vermont. The Second Circuit has previously held that this factor weighs in favor of asserting jurisdiction if the opposite outcome would require the plaintiff to bring a separate action in another forum to obtain relief. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 245 (2d Cir. 1999). Here, Shovah's case against Gary Mercure will continue in this forum. Were the Court to determine that it did not have personal jurisdiction over the Diocese, Shovah might be forced to bring a separate action in New York to obtain relief.

The fourth factor, whether the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, weighs slightly against subjecting the Diocese to jurisdiction. In evaluating this factor, courts look to "where witnesses and evidence are likely to be located." *Metro. Life Ins. Co.*, 84 F.3d at 574. Evidence relating to the underlying abuse in this case may be found in Vermont; however, much of the evidence that would establish the nature of Mercure's relationship with and supervision by the Diocese is likely to be found in New York.

The fifth factor, whether there are substantive social policies that would be furthered by permitting this case to be heard in Vermont, seems relatively insignificant in the instant case. Neither side has alleged any particular societal benefit or detriment created by the exercise of jurisdiction.

On the whole, the reasonableness of exercising personal jurisdiction over the Diocese is a close call. Nonetheless, dismissals resulting from the application of the reasonableness test are meant to be "few and far between." *Metro. Life Ins. Co.*, 84 F.3d at 575. Because the Diocese's case against personal jurisdiction is cogent but not "compelling," the Court finds that the exercise of jurisdiction over the Diocese is not unreasonable. *See Burger King*, 471 U.S. at 477 ("[J]urisdictional rules may not be employed in such a way as to

13

make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.") (internal quotation omitted).

## CONCLUSION

For the foregoing reasons, the Court denies the Diocese's Motion to Dismiss, ECF No. 90.

Dated at Burlington, in the District of Vermont, this 3rd day of September, 2013.

/s/William K. Sessions III__
William K. Sessions III
U.S. District Court Judge